BOSTON AND PROVIDENCE RAILROAD CORPORATION *vs.* OLD COLONY RAILROAD COMPANY & another.

Suffolk.    January 9, 16, 1929. — November 26, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Arbitrament and Award. Contract,* Construction. *Landlord and Tenant,* Construction of lease. *Tax,* On income. *Practice, Civil,* Report. *Words,* "Income," "Business."

A controversy between the parties to a lease by one railroad corporation to another, as to whether the obligation to pay a Federal income tax assessed upon the lessor rested upon the lessee, was submitted to arbitrators under the provisions of G. L. c. 251 by an agreement containing the

following provision: "In making their award the arbitrators shall apply the principles of statutory and common law which in their opinion are legally applicable to the lease and any question of law may in their discretion, or, upon request of all parties, shall be reported by the arbitrators for determination by the court to which their award is to be reported subject to appeal." Believing that the phraseology of the lease was ambiguous, the arbitrators admitted evidence respecting negotiations preceding the execution of the lease and conduct of the parties under its provisions, but stated that their "conclusion would be the same even though the evidence objected to as aforesaid should have been excluded," and reported "for determination by the court the question whether the lease, construed in the light of the facts herein reported, does or does not impose on the lessee the obligation to pay the lessor's Federal income tax." *Held*, that the question of law as to the admissibility of the evidence was not reported for determination by this court; and it therefore was not considered nor passed upon.

A provision in a lease made in 1888 for a term of ninety-nine years by the Boston and Providence Railroad Corporation to the Old Colony Railroad Company was as follows: "And the lessee shall also pay all taxes and assessments, whether in the nature of taxes, now in being or not, of every description, national, state and municipal, or otherwise, upon the property, business, franchises and capital stock of the lessor as the same shall be imposed or assessed, and shall at all times keep the lessor indemnified against the same during the terms of this lease." *Held*, that such provision did not impose upon the lessee an obligation to pay an income tax assessed upon the lessor under the provisions of the Federal Revenue Act of 1926.

No question of practice having been raised at the argument before this court of a report by a judge of the Superior Court of an order by him accepting and confirming "pro forma" an award of arbitrators in a submission under G. L. c. 251 and reporting the case "for determination of" a "question [of law] which the arbitrators reported . . . and disposition accordingly," the case was treated as properly before this court, the court *stating* however that rulings pro forma have been repeatedly disapproved.

SUBMISSION TO ARBITRATION under the provision of G. L. c. 251. The "statement of demands," dated June 13, 1928, was as follows:

"The Boston and Providence Railroad Corporation entered into an Indenture of Lease with the Old Colony Railroad Company dated April 7, 1888, a copy of which is hereto annexed marked 'A.' Said Old Colony Railroad Company in turn demised the property covered by the above mentioned lease to The New York, New Haven and Hartford Railroad Company by an Indenture dated February 15, 1893.

"A tax in the amount of $50,776.07 was assessed to The Boston and Providence Railroad Corporation under the Provisions of the Act of Congress known as the Revenue Act of 1926 in respect of its income for the calendar year 1926. The New York, New Haven and Hartford Railroad Company paid the fourth quarterly instalment of said tax due December 15, 1927, amounting to $12,694.01, under a claim that it was not obligated to pay the said instalment and without prejudice to any right it might have to recover said amount from The Boston and Providence Railroad Corporation, and made due demand for reimbursement of the amount so paid. A Federal income tax return for The Boston and Providence Railroad Corporation was filed for the year 1927 showing a computed tax of $54,828.43. Both the Old Colony Railroad Company and The New York, New Haven and Hartford Railroad Company refused to pay the instalment of this tax due March 15, 1928, amounting to $13,707.11, although due demand for such payment was made by The Boston and Providence Railroad Corporation, and said last named corporation did itself pay said instalment, for which payment it has not been reimbursed by either the Old Colony Railroad Company or The New York, New Haven and Hartford Railroad Company.

"WHEREFORE The New York, New Haven and Hartford Railroad Company demands from The Boston and Providence Railroad Corporation payment to it of the amount of the instalment of tax paid by it December 15, 1927, namely $12,694.01, together with interest thereon from date of such payment, and

"WHEREFORE The Boston and Providence Railroad Corporation demands from Old Colony Railroad Company reimbursement of the amount of the instalment of tax paid by it March 15, 1928, namely $13,707.11, together with interest thereon from the date of such payment."

The substance of the agreement of submission and recitals in the award by the arbitrators is stated in the opinion.

The case was heard in the Superior Court by *Bishop*, J., upon a motion by the Boston and Providence Railroad

Corporation that the arbitrators' award be accepted and confirmed and that judgment be entered thereon and upon a motion by the Old Colony Railroad Company and the New York, New Haven and Hartford Railroad Company that the arbitrators' award be set aside.

By order of the judge, the award was accepted and confirmed *"pro forma"* and, at the request of all parties, he reported the case to this court "for determination of the question which the arbitrators reported as aforesaid and disposition accordingly."

*S. H. Pillsbury,* (*A. P. Lowell* with him,) for Boston and Providence Railroad Corporation.

*C. O. Pengra,* (*J. L. Hall* with him,) for Old Colony Railroad Company and another.

RUGG, C.J.   These parties, pursuant to G. L. c. 251, submitted controversies specified in a statement of demands to the determination of arbitrators, whose award was to be final subject to this provision: "In making their award the arbitrators shall apply the principles of statutory and common law which in their opinion are legally applicable to the lease and any question of law may in their discretion, or, upon request of all parties, shall be reported by the arbitrators for determination by the court to which their award is to be reported subject to appeal." The award of the arbitrators states that the question at issue arises out of a clause in a lease by the Boston and Providence Railroad Corporation of its railroad and property to the Old Colony Railroad Company for a term of ninety-nine years from April 1, 1888. That clause is of the tenor following: "And the lessee shall also pay all taxes and assessments, whether in the nature of taxes, now in being or not, of every description, national, state and municipal, or otherwise, upon the property, business, franchises and capital stock of the lessor as the same shall be imposed or assessed, and shall at all times keep the lessor indemnified against the same during the terms of this lease." The lessee demised the property covered by this lease to the New York, New Haven and Hartford Railroad Company for the term of ninety-nine years from March 1, 1893. Hence the latter corporation, hereafter called the

New Haven Company, is a party to the arbitration and to these proceedings.

The point for determination by the arbitrators was whether the obligation to pay the Federal income tax assessed upon the lessor rests upon the lessee. Facts stated in the award are that the lease covered all the property of the lessor and after it took effect the operations of the lessor were to be confined substantially to the maintenance of its organization, the collection of the rental and the payment of dividends to its stockholders. The annual rental was exactly equivalent to ten percent on the capital stock of the lessor, and dividends at that rate have been paid to its stockholders until the present controversy arose. The arbitrators stated their problem to be to determine whether the lessor's Federal income tax is included in the words already quoted from the lease, to wit: "all taxes and assessments, whether in the nature of taxes, now in being or not, of every description, national, state and municipal, or otherwise, upon the . . . business . . . of the lessor." Believing that this phraseology was ambiguous, the arbitrators admitted evidence as to (1) the preliminary negotiations of the parties and (2) the construction placed upon the lease by the lessor and the New Haven Company. Thus it appeared that from the enactment of the Federal income tax law in 1913 to the latter part of 1927 the New Haven Company paid to the lessor the amount of the Federal tax upon the income of the lessor without raising any question as to its liability therefor under the lease. There was no evidence that the lessee participated in any way in these payments. The arbitrators state: "We have come to the conclusion that the Federal income tax is covered by the language of the covenant in the lease. All the material facts are stated in this award. Our conclusion would be the same even though the evidence objected to as aforesaid should have been excluded." The arbitrators concluded their report in these words: "Under the provision contained in the last paragraph of the arbitration agreement we report for determination by the court the question whether the lease, construed in the light of the facts herein

reported, does or does not impose on the lessee the obligation to pay the lessor's Federal income tax."

In these circumstances the question of law as to the admissibility of the evidence is not reported for the determination of the court. In any event it need not be considered or passed upon.

The question for decision is that reported by the arbitrators. It is not concluded by direct authority. The closest approach is *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379. As pointed out by the arbitrators in their report, this lease differs in two particulars from the lease there under consideration: (1) it contains a more elaborate expression in the early part of the vital clause of intention by the parties to cover every kind of tax, whether then in being or thereafter exacted, upon the subjects described, and (2) it includes "business" in addition to "property, franchises and capital stock" as the subjects upon which the taxes levied are to be paid by the lessee. The rule has been formulated that, unless the lease "expressly provides for the payment of taxes on the income from rentals received under the lease, the imposition of such a burden is not justified." *Illinois Central Railroad* v. *Indianapolis Union Railway*, (C. C. A.) 6 Fed. Rep. (2d) 830, 837. *Brainard* v. *New York Central Railroad*, 242 N. Y. 125, 132. *Young* v. *Illinois Athletic Club*, 310 Ill. 75, 82. The rule prevalent in this Commonwealth is not so inelastic. If it fairly appears from the lease as a whole that the parties intended to impose upon the lessee ultimate obligation to pay an income tax assessed upon the lessor in respect to the rental, that intention will be given effect, although there is in express words no provision to that effect in the lease. *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390. In *Whitlock* v. *Boston & Maine Railroad*, (C. C. A.) 29 Fed. Rep. (2d) 351, the question arose whether the obligation to pay the Federal income tax assessed upon the income of a lessor railroad corporation in much the same situation as the present lessor rested upon the lessee under its agreement

that "it will pay all taxes, assessments and charges whatsoever that may be imposed upon or payable by said party of the first part on account of its property, franchise, capital stock or otherwise during said term." It was held that the words "or otherwise," in addition to the specification of property, franchise and capital stock, cast upon the lessee the burden of the Federal income tax and protected the lessor from that liability, thus differentiating the case from *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379.

At the time of the execution of this lease, no direct or indirect tax upon the earnings of a railroad corporation was imposed by the United States or by this Commonwealth. Income taxes were not then unknown. At that time there was such a tax in this Commonwealth upon the income of an individual derived from his profession, trade or employment. Pub. Sts. c. 11, § 4. *Wilcox* v. *County Commissioners*, 103 Mass. 544. A similar income tax had prevailed at least since St. 1821, c. 107, § 2. For earlier and other taxes of that nature, see *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429, 559, and The Income Tax by Seligman, pages 367–371. During the Civil War and the years immediately following, taxes were imposed by Congress upon incomes of individuals and of corporations. 12 U. S. Sts. at Large, 309, c. 45, § 49; 468, c. 119, § 80. 13 U. S. Sts. at Large, 281, c. 173, § 116. 14 U. S. Sts. at Large, 138, c. 184, § 9; 477, c. 169, § 13. 16 U. S. Sts. at Large, 257, c. 255, § 6. These acts of Congress had been the subject of litigation. *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433. *Barnes* v. *The Railroads*, 17 Wall. 294. *Railroad Co.* v. *Collector*, 100 U. S. 595. *Bailey* v. *Railroad Co.* 106 U. S. 109. It must be presumed that the lease in question was drafted in view of the general fund of knowledge of the time. The parties were not attempting to guard against a recondite type of taxation to be evolved in the future. Income taxes have existed for many years in some form. The name was at hand if the parties had wanted to use it. Some experience also was available. Sweeping language also might have been used without attempt at specification, if that had been the purpose of the parties. See *Pittsfield & North*

*Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390, where that course was pursued. In these circumstances the omission of the word "income" from the enumeration of subjects of taxation assumed by the lessee is not without significance. The factor that the rental was in amount precisely ten percent upon the capital stock of the lessor is to be considered. But the parties did not provide, as they might have done, that the rental was in all events and at every hazard to be a net amount always available without diminution for any cause.

The question is narrowed to the point whether the word "business," in the enumeration of subjects on which taxes of every kind were assumed by the lessee, is broad enough to include the income made liable to the Federal tax here in issue. "Business" is a word in common use, of large import and extensive signification, not susceptible of a definition at once sufficiently particular and comprehensive to be applicable to all cases. *Collector of Taxes* v. *New England Trust Co.* 221 Mass. 384, 388. *Whipple* v. *Commissioner of Corporations & Taxation,* 263 Mass. 476, 485. There are numerous decisions holding that, as the word "business" is used in different statutes, a corporation situated as is this lessor is not conducting business. *Attorney General* v. *Boston & Albany Railroad,* 233 Mass. 460, and cases there reviewed. *McCoach* v. *Minehill & Schuylkill Haven Railroad,* 228 U. S. 295. *United States* v. *Emery, Bird, Thayer Realty Co.* 237 U. S. 28. It has been held that this lessor was not doing business in the sense in which that phrase was used in 36 U. S. Sts. at Large, 112, c. 6, § 38. *Boston & Providence Railroad* v. *Gill,* 257 Fed. Rep. (D. C.) 221. On the other hand, comparatively slight corporate activities have been held in other connections to constitute a doing of business. *Copper Range Co.* v. *Commonwealth,* 218 Mass. 558, 576; affirmed in *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147. *Springdale Finishing Co.* v. *Commonwealth,* 242 Mass. 37. It is not necessary to classify these cases or to attempt to formulate a rule deducible from them. There would be an inescapable incongruity in interpreting a tax on "business" in the

lease to include an income tax when for other purposes the lessor is held not to be conducting business. It was said in *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429, at page 578, referring to *Railroad Co.* v. *Collector*, 100 U. S. 595, a case arising under the Civil War act of Congress levying a tax on dividends, interest on bonds and all profits of railroad and other corporations: "the validity of a tax collected of a corporation upon the interest paid by it upon its bonds was held to be 'essentially an excise on the business of the class of corporations mentioned in the statute.'" This was in substance a reiteration of what was said in the earlier case. There is also a reference to this governmental exaction as a "tax upon the business of" the company in *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433, 446. We do not attach very much significance to these decisions in their bearing on the point here to be decided, because there seems to have been no controversy that the corporations there under consideration were carrying on business.

An agreement to pay all taxes on business of a corporation, situated as is the lessor with reference to the conduct of business, does not, according to the common and approved usage of the language, convey the idea of a tax on income. The difference between an income tax and an excise tax upon the conduct of business in a corporate capacity has repeatedly been pointed out by the Supreme Court of the United States and is well defined. *Anderson* v. *Forty-two Broadway Co.* 239 U. S. 69, 72, and cases there collected.

The maintenance of the corporate organization of the lessor, the keeping of its offices, the receipt of its revenue and the payment of its dividends, and its other activities might be made the subject of a tax on its business. *Copper Range Co.* v. *Commonwealth*, 218 Mass. 558. Its capacity and right to do business might be the subject of a tax. There thus is ample scope for a meaning to the word "business," as used in its context in the lease, without confining the word to the conduct of the business of operating its railroad vested in the lessee under the lease.

Notwithstanding the strong report of the arbitrators, we

feel constrained to the view that the clause of the lease in question does not impose on the lessee the obligation to pay the income tax assessed on the lessor and here in issue.   The reasoning of the opinion in *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379, is controlling in the case at bar.

The lessor moved that the award be accepted and confirmed and judgment entered thereon.   The lessee and the New Haven Company moved that the award be set aside for error of law and recommitted to the arbitrators.   The trial judge accepted and confirmed the award· *pro forma* and at the request of the parties reported the case for determination by the full court "of the question which the arbitrators reported as aforesaid and disposition accordingly." Thus he followed in substance the course pursued in *Selectmen of Danvers* v. *Commonwealth*, 184 Mass. 502, where the proceeding was under a special statute, although rulings *pro forma* have been repeatedly disapproved.   *Blake* v. *Pegram*, 101 Mass. 592, 597.   *Parker* v. *Parker*, 118 Mass. 110.   *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 89. *United States* v. *Gleeson*, 124 U. S. 255.   *William Cramp & Sons* v. *International Curtiss Marine Turbine Co.* 228 U. S. 645.   *Ex parte Harley-Davidson Motor Co.* 259 U. S. 414, 417, 418.   No question of practice has been raised and the case is treated as properly here.   See, however, G. L. c. 251, §§ 10, 12; c. 231, § 111.

It follows from what has been said that the ruling of the arbitrators on the question of law reported by them was erroneous.   It is stated in the award that all the material facts are narrated therein.   The arguments have been made on that basis.   In these circumstances no reason appears why judgment required by the rule of law here declared applicable should not now be ordered to be entered.   G. L. c. 251, § 12; c. 231, § 124.   The order of the Superior Court is reversed.   The report of the arbitrators, so far as it concerns the material facts, is accepted and confirmed; the award of the arbitrators as to sums to be paid is reversed.   The details of the judgment to be entered in accordance with this opinion are to be determined in the Superior Court.

*Ordered accordingly.*